ESTATE OF EMILIE K. JENNINGS, DECEASED, MURIEL J. FEENEY, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Jennings v. Commissioner
Docket No. 2062-75.
United States Tax Court
T.C. Memo 1976-152; 1976 Tax Ct. Memo LEXIS 250; 35 T.C.M. (CCH) 687; T.C.M. (RIA) 76152; May 18, 1976, Filed *250 Gregory C. Willis and John P. Chiota, for the petitioner. Justin S. Holden, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency of $265,607.86 in petitioner's Federal estate tax. Other issues having been settled by the parties, the only issue remaining for decision is the value, as of the date of decedent's death, of a tract of unimproved real estate located in Westport, Connecticut. FINDINGS OF FACT Decedent, Emilie K. Jennings, a resident of Westport, Connecticut, died on September 9, 1971.Muriel J. Feeney (hereinafter Feeney) was appointed executrix of decedent's estate, and, as executrix, she filed the Federal estate tax return for decedent's estate with the District Director of Internal Revenue, Hartford, Connecticut. At the time the petition was filed, Feeney was a legal resident of St. Petersburg, Florida. Decedent died possessed of a 38-acre parcel of real estate cataloged as Lot 5 on Map 5448-2 of the Tax Maps of the Town of Westport, Connecticut. The property is bounded on the north and, partially, on the east by Beachside Avenue, a road paralleling the *251 shore of Long Island Sound. Another segment of the property line to the east is a creek and Burying Hill Road, which leads to a public beach owned by the Town of Westport. The southern boundary of the property is a creek and salt marshes. The western boundary is the right-of-way of the mainline of the New York-New Haven-Hartford railroad, known as Penn Central and Amtrak. The Connecticut Turnpike runs parallel and adjacent to the mainline of the New York-New Haven-Hartford railroad right-of-way, approximately 100 feet from decedent's property. Although the property is located quite close to Long Island Sound, it has no actual shore-front acreage. Approximately 6 acres of the southern portion of the tract are marshland which is subject to tidal flooding. The only access to the property is Beachside Avenue, which is a hilly, two-lane road passing the property on the east. Approaching the property from the west on Beachside Avenue requires passage over a bridge which spans the New York-New Haven-Hartford railroad. This bridge was constructed sometime during the period 1915 to 1920 with steel sides and fencing above it. It has an original wooden deck which has been partially *252 replaced and asphalted. The bridge is wide enough to permit only two cars to pass. Approaching the property from the south on Beachside Avenue requires passage over another narrow bridge which is wide enough for only two cars to pass. The property has access to city water and electric and telephone service. However, the property does not have sewerage service, and the nearest sewerline is located across the railroad tracks and the Connecticut Turnpike along Beachside Avenue, a distance of approximately 1 mile. In 1971 an old single-family dwelling was located on the property, but the dwelling was in poor repair and did not add materially to the value of the tract. At the time of decedent's death, the property was zoned by the Town of Westport for single-family dwellings on 2-acre lots. The Town of Westport Zoning Regulations provided for a Design Development District designation upon application and approval of an appropriate plan. Under a Design Development District designation, property may be utilized for the construction of corporate headquarters and other similar commercial developments. Such a designation was granted to Stauffer Chemical Company for a parcel of land *253 in the immediate vicinity of decedent's property. A Design Development District designation was also granted to Chesebrough Ponds Corporation for a tract of land in the vicinity of decedent's property, but subsequent litigation resulted in a reversal of the grant. On November 16, 1970, decedent entered into a contract to sell the property to Paul Properties--Westport, Inc. (hereinafter the buyer), for $1,000,000. The contract was contingent upon the buyer's obtaining, at his own cost and expense, a zoning change which would permit the construction on the property of an apartment or condominium complex having a density of not less than 10 family units per acre. On January 20, 1972, a public hearing was held by the Westport Planning and Zoning Commission on an application on behalf of decedent and the buyer to change the tract's zoning designation. On July 13, 1972, the application was denied. On August 2, 1972, the buyer appealed the denial of the application to the Connecticut Court of Common Pleas, and the appeal was dismissed on July 16, 1974, for failure to prosecute with reasonable diligence. As a result, the contract was not finally consummated. In the Federal estate *254 tax return filed for decedent, the real estate in question was valued at $500,000. In the notice of deficiency, respondent determined that the property had a value of $1,200,000. At the trial, respondent conceded that the value of the property did not exceed $1,000,000. OPINION The valuation of real property is a factual issue which turns on all the relevant evidence. In the instant case, the parties have presented expert witnesses who testified as to values ranging from a low of $400,000 to a high of $1,200,000, basing their estimates on various factors such as location of the property, zoning restrictions, and comparable sales in nearby areas.From the evidence presented, we find that the value of the property in question was $750,000 as of September 9, 1971. This 38-acre tract of land is located near the water's edge of Long Island Sound in an area which is often referred to as the "Gold Coast." It is a residential area of higher-priced homes and office headquarters of some large corporations. The population consists of upper-income executives and business and professional residents, many of whom commute to New York or other nearby business centers by way of the Connecticut *255 Turnpike or Amtrak. In 1971 there was a brisk demand in the area for homes and homesites, and homesites were in short supply. Yet there were practical difficulties in developing the particular tract here in question which tended to depress its value. Respondent's witness testified that the property could best be utilized in one of two ways--either as an office headquarters for a large corporation or as a single-family housing development. Basing his opinion on sales of real estate in the Westport area, as well as his interpretation of the general economic trends, respondent's witness valued the property at $1,200,000 if used for office-building development and $800,000 if used for single-family dwellings. Taking into consideration decedent's contingent contract for the sale of the property signed on November 16, 1970, respondent now concedes that the value of the property did not exceed $1,000,000. In our opinion, however, the record does not support a finding that the property was worth as much as $1,000,000 at decedent's death. Before any type of development could be undertaken, several expensive major improvements would have been required, including the construction of *256 sewage disposal facilities and access roads. In terms of developing the property as an office-building complex, an interested developer would have been forced to apply for a change in zoning requirements from the existing single-family zoning to the proper commercial zoning status, and there is no assurance that such a zoning change would have been approved. Indeed, the $1,000,000 sales contract, relied upon by respondent to support a value in that amount, was entered into by decedent on the contingency that the buyer would obtain a change in the zoning requirements to permit use of the tract for apartments or condominiums. The contract was not consummated because the required zoning change could not be obtained. The access problems, discussed below, would be even more acute if a large office building were constructed on the property. Only one narrow, paved road provided access to decedent's property. Commercial development of the property would have required substantial capital outlays for an adequate access road system. Respondent points out several nearby tracts of land which have been developed for commercial use and insists that the property in question could be similarly *257 developed. However, those nearby tracts are not comparable because they have convenient access to one or more major highways. Respondent has also attempted to establish the property's value as a possible single-family dwelling-development, emphasizing the heavy homesite demand in the Westport area. While we agree that the property could be utilized for single-family dwellings, several factors tend to depress its value for that purpose. The need for sewerage and road construction, as in the case of commercial development, would tend to lower the value. The zoning for 2-acre lots would limit the number of homesites. About 6 acres of marshland could not be used without expensive landfilling or other measures. In addition, the proximity of the heavily used Penn Central and Connecticut Turnpike rights-of-way along the western boundary of the tract renders it less valuable for residential use. According to the testimony of one of the experts, those portions of decedent's property within 600 feet of the railroad would not be suitable for residential development under Federal Housing Authority standards unless costly capital improvements were undertaken to abate the noise levels. *258 Based on all the available evidence, it is our opinion that the value of the property as of September 9, 1971, was $750,000. To reflect the foregoing, Decision will be entered under Rule 155.